**Steven Don HOLLAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 86 107 CR.**

Court of Appeals of Texas,
Beaumont.

April 29, 1987.

---

James A. DeLee, Port Arthur, for appellant.

Tom Maness, Crim. Dist. Atty., John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

OPINION

BURGESS, Justice.

A jury found appellant guilty of burglary of a habitation and, after proof of enhancing offenses, sentenced him to forty years in the Texas Department of Corrections. At trial, the complainant testified that appellant, her next door neighbor in an apartment complex, knocked at her door at approximately 3:45 a.m. to ask for some cooking grease. She left the door to her apartment "cracked" while retrieving it for him. Appellant, without invitation, joined her in the kitchen and told her that he had always "wanted" her since she first moved into the complex. He then placed his arm around her throat, held a gun to her head, forced her to walk to the front door, and then

locked it. After telling her that they "were going to be alone", he forced her down the hallway to her bedroom. During that time he asked her whether they were alone but she did not answer. Upon turning on the light in the bedroom, appellant was surprised by the presence of her fiance. Appellant then fled. Her fiance corroborated this testimony to the extent of his involvement, although he did not recall seeing the gun. Appellant's defense consisted solely of cross-examination. He raises seven points of error.

■ He first alleges that the trial court erred in refusing to grant his motion to quash one of the enhancement paragraphs. The motion is based on the fact that his attorney on the previous conviction was the district attorney at the time he was tried on the instant offense. He next alleges that, for the same reason, it was error to introduce his pen packet into evidence. The state agrees that the district attorney was appellant's counsel on the enhancement conviction but disputes that it must be disqualified from use. We agree with the state.

Although appellant points to *TEX.CODE CRIM.PROC.ANN. sec. 30.01* (Vernon 1966) and *TEX.CODE CRIM.PROC.ANN. sec. 2.08* (Vernon 1977) to support his equal protection argument, we find them inapposite. *Section 30.01* disqualifies judges from sitting in the same cases in which they previously represented either the state or the accused. Similarly, *section 2.08* disqualifies former prosecuting attorneys from switching sides in cases where they have been of counsel for the state. This conflict of interest is not present when the former representation involves an enhancing offense because that previous conviction is not part of the same case as the one to be tried. Our Court of Criminal Appeals made this distinction in *Hathorne v. State*, 459 S.W.2d 826, 833 (Tex.Crim. App.1970) when it rejected the contention that *section 30.01* disqualified a trial judge because he had previously represented the State in the enhancement offense. We further note that there was no proof that the district attorney "actively participated" in the prosecution of the instant offense. *Hathorne, supra* at 831. Thus, using the enhancing offense in appellant's case did not deny his right to equal protection under our federal and state constitutions. Points of error one and two are overruled.

Appellant's next two points of error complain that the court abused its discretion by denying his amended motion for a new trial. Appellant initially moved for a new trial on the basis of newly discovered evidence, an eyewitness whose testimony directly contradicted that of the complainant and her fiance.

By affidavit, this witness stated that she came to appellant's apartment at approximately 2:15 a.m. on the night of the burglary. Appellant went next door for cooking oil in order to make popcorn. She stood down the landing from the complainant's door and observed him asking for and receiving the cooking oil. When he asked the complainant if she would discuss an altercation they had the day before, she slammed the door in his face. The witness then slept with appellant until around 7:30 a.m.

On May 27, 1986, more than 30 days after March 20, 1986, when the sentence was imposed, the court granted appellant leave to amend his motion for a new trial to allege that an agreement entered into with the prosecutor had been broken. The substance of the alleged agreement, entered into on April 21, 1986, as set out in that motion, follows:

1. The Court would withold [sic] its ruling on Motion for New Trial until after completion of trial on the companion case: Cause No. 46,245, styled: State of Texas v. Steven Don Holland, in the 252nd District Court of Jefferson County, Texas.

2. That should Defendant be found not guilty in the subsequent trial, then the State would join in Defendant's Motion for New Trial in the instant case and the Court would approve same.

Although the trial court reset the hearing and scheduled the second trial to accomodate this agreement, the Prosecutor dismissed the second cause before it came to

trial and then opposed rather than joined the motion for new trial. Appellant complains that this is tantamount to a breach of contract. He cites *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), a case involving the breach of a plea bargain, as requiring a new trial in this case. He also argues that the trial court erred by overruling the motion for new trial irrespective of the alleged breach. We disagree on both points.

■ Preliminarily, the state argues that the matter of the existence and breach of the agreement is not properly before us because the trial court had no discretion to allow appellant to amend his motion for new trial more than 30 days after it imposed sentence. *TEX.CODE CRIM.PROC. ANN. art. 40.05* (Vernon Supp.1985); *Dugard v. State,* 688 S.W.2d 524, 530 (Tex. Crim.App.1985); *Washburn v. State,* 692 S.W.2d 576, 578 (Tex.App.—Houston [1st Dist.] 1985, no pet.). Although this would normally have been the result under *Dugard, supra,* the amendment in this case was based upon a breach which did not occur until after the thirty day period had run. As noted in *Whitmore v. State,* 570 S.W.2d 889, 898 (Tex.Crim.App.1977), even when an initial motion for new trial is not filed until after expiration of the thirty day period, an exception to the deadline occurs when there is "good cause for the late filing of the motion for new trial" and there is a conflict between the appellant's constitutional rights and the procedural rule. That exception merits consideration of appellant's point raised by his amended motion for new trial even though it tenuously rests on his claim that breach of the agreement injected fundamental unfairness in the proceeding.

Although appellant characterized the agreement as one between the prosecutor, himself, and the court, the record bears out that the court's role was more limited. The following interchange explains the court's position:

[APPELLANT'S COUNSEL]: [I] think [the PROSECUTOR] will—I don't want to use the word admit, but concur would be a better statement—that the second ground that I placed in the amended motion is a true representation of what our agreement was.

[PROSECUTOR]: If I may interject at this moment, your Honor, the state does concur with that description. I believe, however, we can narrow the lines in stating that the point in contention is whether or not there was an agreement to actually try the subsequent case.[1] There is no question that if the subsequent case were tried, the defendant was found not guilty, the State would agree to join in a motion for a new trial in this case. It is the State's contention, however, there was no guarantee or promise to actually try the subsequent case. And I think we can narrow the point of contention down to that single point.

[APPELLANT'S COUNSEL]: If the Court please, the trial was scheduled on the second case, was scheduled by the Court—

THE COURT: I will acknowledge everything that is in here. But many times I schedule cases just like today, got three scheduled and I understand none of them are going to trial. But I was not privy to any other comments between you and the State other than the fact that I would not have the motion for a new trial hearing until we saw the outcome of that second case. That is why I didn't have the hearing. Set it for trial and then the State did file a motion to dismiss. That is the only part that I recall, Jim.

[APPELLANT'S COUNSEL]: The court doesn't recall that there was a promise to dismiss if we won the second case?

THE COURT: I do recall the fact that if we went to trial and he was found not guilty, they would join in a motion for a new trial, is the way I understood it. Not so much a dismissal of the case that we are having the hearing on today, but they would join in the motion for a new trial.

---

1. We reject this argument for the purpose of our analysis since we assume the agreement was broken and specific performance is the correct remedy.

[APPELLANT'S COUNSEL]: Yes, sir. That is all we are asking. We are not asking for it to be dismissed. We are asking for a new trial to put this new evidence before a jury.

THE COURT: That is the way I recall what occurred.

The Court's recollection did not, therefore, match appellant's representation of the agreement in his amended motion; the Court retained the prerogative to deny the motion even had the state joined it. If, as appellant urges, we were to follow *Santobello, supra,* we would order the state to specifically perform its bargain by joining in the motion for new trial. This would not have eviscerated the trial court's discretion. Thus, we could not sustain appellant's point unless the court otherwise erred in refusing to grant a new trial. Moreover, we are unwilling to assign this breach the same importance as the breach in *Santobello, supra.*

In that case, the trial judge stated that he made his sentencing decision based on the maximum sentencing recommendation in the presentence report rather than that same recommendation by the prosecutor in breach of his bargain to make no sentencing recommendation. The Supreme Court rejected the argument that the breach of the plea agreement was immaterial because of the important function plea bargaining plays in the administration of justice. Our case, however, does not involve such a bargain. Although appellant states that he agreed to put himself in a position of jeopardy on the second indictment as his quid pro quo, such consideration fails since he had no choice in the matter. Even though any promises the prosecutor makes should be honored, we are unwilling to conclude that the breach of this "agreement" was so important that it merits reversal irrespective of an analysis of its effect on the proceedings.

■ The court's reasoning in that regard is a matter of record. Appellant's "newly discovered" witness testified at the hearing on the amended motion for new trial. She explained that she had not come forward because both her relationship with her ex-husband and appellant's relationship with his "old lady" at the time of their early morning tryst would have made it embarrassing to admit their involvement. She also stated that she was difficult to locate because she moved around a lot, she unilaterally decided to come to appellant's trial to testify, and had a car wreck while en route the trial that hospitalized her and prevented her from testifying. The court had the following discussion with appellant's attorney:

THE COURT: I can't imagine somebody having that kind of testimony or evidence and your client not telling you. It just appalls me.

[APPELLANT'S COUNSEL]: Well, I am not saying he didn't tell me. I am saying we couldn't find her. And she said that she wasn't going to be found.

THE COURT: I didn't hear any evidence that you couldn't find her. I got the impression that no one knew she was there until it was too late. She held back. Then after the verdict comes down, then everything happended. I may be misinterpreting the evidence, but she was not going to be available until that day of the trial. And you know I have got some legal ways to make her available.

[APPELLANT'S COUNSEL]: Yes.

THE COURT: She said she won't honor a subpoena, but there are ways to get around that, too. Okay.

The court therefore, considered the motion on the merits of the newly discovered evidence. A trial court has not abused its discretion by overruling a motion for new trial based on newly discovered evidence unless the record demonstrates that: (1) the movant did not know about the evidence before trial; (2) the belated discovery did not result from a want of diligence; (3) the new evidence would have probably brought about a different result in the trial; and (4) the new evidence was competent, not merely corroborative, cumulative, collateral, or impeaching. *Boyett v. State,* 692 S.W.2d 512, 516 (Tex.Crim.App.1985); *Van Byrd v. State,* 605 S.W.2d 265, 267 (Tex.Crim.App.1980). Appellant's motion

obviously fails the first condition since he always knew that the witness could tell a different story; in that respect his appeal is that the witness's hiding and her unavailability on the day of trial due to the wreck suffice for these first two requirements.

Although there are circumstances when newly available evidence is treated as if it is newly discovered, they are not present in this case. The witness was not reticent because of force, threats, or fraud that prevented her appearance. *See, Washington v. State,* 642 S.W.2d 194, 196 (Tex.App. —Houston [14th Dist.] 1982, pet. ref'd). Her previous unavailability did not rest on her constitutional privilege against self-incrimination. *See, Whitmore v. State, supra* at 896.

The "newly available" witness testified that she had an understanding with appellant concerning the necessity of keeping their affair secret that, in her own mind, absolved her of any responsibility to testify. She also stated that neither appellant nor his attorney had contacted her concerning the trial. Rather, she got her information concerning the trial from appellant's sister. Appellant's sister last called her on the eve of trial, but she maintained that even then no one knew that she intended to testify.

Somewhat at odds with this were the insinuations of appellant's counsel that appellant did tell him about the witness prior to trial and that there had been some effort to locate her. Despite these suggestions and testimony that his sister had located the witness, appellant introduced no evidence to show that he made any independent effort to secure her testimony. He did not, for instance, ask the court to continue the proceedings so that he could find the witness and bring her to trial. *See Sapien v. State,* 705 S.W.2d 214 (Tex.App. —Texarkana 1985, pet. ref'd). Thus, his lack of diligence in attempting to locate and subpoena the witness is manifest and supports the denial of the motion for new trial.

■ Finally, in ruling on the motion the trial court is charged with the responsibility of judging the probability that the proffered testimony is true. *Eddlemon v.*

*State,* 591 S.W.2d 847, 850 (Tex.Crim.App. 1979); *Todd v. State,* 601 S.W.2d 718, 721 (Tex.Crim.App.1980). The court noted this responsibility relative to the witness' statement that she was on the way to court to testify at the time of her wreck; it could well have judged the rest of her testimony with skepticism and denied the motion for new trial because it found the witness' story unbelievable.

■ We, therefore, find that the trial court did not abuse its discretion in overruling the motion for new trial. The evidence was not newly discovered or newly available nor was appellant diligent in "having a known witness appear in court." *See Washington, supra* at 196. Appellant's points three and four are overruled.

Appellant next alleges that prejudicial jury argument should have resulted in a mistrial based on the prosecutor's remark that the jury could "consider flight as evidence of guilt." Although appellant argues that "it is error to presume that flight can be evidence of guilty in a burglary charge unless injury occurs and the jury is so charged", he cites no authority for this proposition. Conversely, the cases are clear that an inference of guilt may be made based on flight. *E.g., Keller v. State,* 606 S.W.2d 931, 933 (Tex.Crim.App. 1980); *Powell v. State,* 560 S.W.2d 646, 650 (Tex.Crim.App.1977). Thus, when the trial court sustained appellant's objection to the prosecutor's statement and instructed the jury to disregard, it was based on its particular wording. The court's instruction cured the error since neither the motive for nor the effect of the statement merited a mistrial. *See, Plunkett v. State,* 580 S.W.2d 815, 825 (Tex.Crim.App.1979). Appellant's fifth point of error is overruled.

■ Appellant's final points of error complain of the insufficiency of the evidence to sustain his conviction. He maintains that the proof of the intent requisite to burglary and of the complaining witness' lack of consent to his entry failed. On reviewing these points, we must evaluate the evidence in the light most favorable to the verdict. *Jackson v. State,* 672 S.W.2d

801, 803 (Tex.Crim.App.1984). With that in mind, neither point is well taken.

Appellant's intent to commit the sexual assault can be inferred from his remarks and the circumstances surrounding his act. *See Meredith v. State,* 171 Tex.Cr.R. 359, 350 S.W.2d 550, 551 (1961); *Ercanbrack v. State,* 646 S.W.2d 480, 481 (Tex.App.— Houston [1st Dist.] 1982, no pet.). The complainant testified that after appellant entered her apartment without invitation, he stated that he "wanted" her and that they "were going to be alone" in conjunction with locking the front door, holding a gun to her head, and forcing her down the hall to her bedroom. Further, her testimony that appellant carried a gun into her apartment flies in the face of his allusion to entry by consent with subsequent intent to sexually assault the complainant. The jury could have found the necessary intent from this evidence.

Similarly, the evidence supports a finding that appellant entered the apartment without the complainant's consent. Although she admitted on cross-examination that the door was ajar and she did not tell appellant that he could not enter, neither did she tell him that he could enter. She did, however, tell appellant, "just a minute" at an early morning hour, a time when the jury could have well surmised that the complainant did not purposefully leave the door ajar as an implied invitation for appellant's behavior. It could have concluded that her instruction was an implied command for appellant to wait outside her apartment. In sum, there was ample circumstantial evidence that appellant did not enter with the complainant's consent. *See, Prescott v. State,* 610 S.W.2d 760, 763 (Tex.Crim.App. 1981).

For the foregoing reasons, the judgment is affirmed.

AFFIRMED.